# Thomas *v.* The State.

*Indictment for Assault and Battery.*

1. *Assault and battery ; competency of evidence to show motive of assault:*—On a trial under an indictment for an assault and battery, in connection with the fact proven that the person assaulted, immediately preceding the assault, had taken his sister away from a restaurant, where she was with the defendant, it is competent to prove the further fact, that the defendant, very soon after the assault complained of, married said sister of the person assaulted ; such evidence tending to show a motive for the assault.

2. *Examination of witness ; competency of evidence showing surprise.* Where, during the examination of a witness, who testifies differently from what the party introducing him had a reason to believe he would testify, and contrary to what he had previously stated, for the purpose of showing surprise on the part of the person introducing such witness, and to relieve him from the disadvantage at which he had been put by unexpected evidence, it is competent to prove that such witness had made a statement to another witness, contrary to what he had just testified ; and such evidence is competent and admissible, although its incidental effect may be the impeachment of such witness by the party introducing him. (COLEMAN, J., *dissenting.*)

3. *Same ; same ; facts of this case.*—On a trial under an indictment for an assault and battery, where the sister of the person assaulted,

[Thomas v. The State.]

who was introduced as a witness for the defendant, in answer to a question, testified that her brother had not told her "that he did not know who hit him," it is competent for the defendant to ask such witness if she did not tell the defendant's father, the morning of the trial, that she would swear that her brother came home soon after he was struck, and told her he did not know who hit him. The purpose of the testimony intended to be evoked by the question being, to show surprise on the part of the defendant, and to relieve him from the disadvantages at which he had been put by unexpected evidence, such evidence was competent and admissible for this purpose, although the incidental effect thereof might be the impeachment of the defendant's witness. (COLEMAN, J., *dissenting*.)

APPEAL from the Circuit Court of Conecuh.
Tried before the Hon. JOHN R. TYSON.

The appellant was indicted, tried and convicted for an assault and battery upon one Henry Hunter. Upon the trial of the cause, as is shown by the bill of exceptions, the State introduced Henry Hunter as a witness, who testified that on the night he was assaulted and beaten, he went into a restaurant kept by one Rogers for the purpose of getting his sisters who were there ; that the defendant and others were in the restaurant at the time ; that he got his sisters out of the restaurant and sent them home, and while he was standing in the street five or six feet from the door of the restaurant, the defendant came out of the restaurant with a billiard cue and struck him in the mouth. On the cross-examination of this witness, the defendant asked him the following question : "Did you tell your sisters, Estelle and Bessie, at your father's house, where you all live, the same night you got the blow, and an hour after it was struck, that you did not know who it was that struck you?" To this question the witness answered that he did not. On re-direct examination, this witness testified that Virginia Hunter was his youngest sister, and that he went to the restaurant that night to get her, Virginia, to come out of the restaurant and to go home. The State then asked the witness the following question : "Did not the defendant, very soon after he struck you, marry your sister Virginia?" To this question the defendant objected, on the ground that it was incompetent and called for irrelevant and immaterial evidence. The court overruled the objection, and the defendant duly excepted. Upon the witness replying that he did, the de-

[Thomas v. The State.]

fendant moved the court to exclude the answer, upon the ground that it was incompetent, irrelevant and immaterial testimony. The court overruled the objection, and the defendant duly excepted.

The evidence for the defendant tended to show that he was not the person who struck Henry Hunter.

Estelle Hunter was introduced as a witness for the defendant, and after she had testified that she was the sister of Henry Hunter, and was at her father's house when he came there shortly after he was struck, the defendant asked the witness the following question : ''Did not Henry. Hunter tell you, at your father's house, where you all live, the same night he was struck, and about an hour after he was hit, that he did not know who hit him?'' Upon this witness answering that he did not, the defendant then asked the witness, if she did not tell the father of the defendant that morning, at her father's house before the trial, that she would swear that her brother, Henry Hunter, came home soon after he was struck that night, and told her that he did not know who it was that hit him? The State objected to this question, on the ground that the defendant could not impeach his own witness. The defendant's counsel stated to the court that he was taken by surprise by the answer of the witness ; as she had made the statement which she was asked about that morning, at her father's house. The court refused to allow the question to be answered, and sustained the objection of the State. To this ruling the defendant duly excepted. These facts present the only rulings of the trial court to which exceptions were reserved.

JOHN D. BURNETT, for appellant.—While a party can not, as a general rule, contradict or impeach his own witness, he may, when put at a disadvantage by an unexpected answer, or for the purpose of refreshing the memory of the witness, ask him whether, at a certain time and place, he has not made other statements inconsistent with his testimony as just given.— *White v. State*, 87 Ala. 24 ; *Griffith v. State*, 90 Ala. 583 ; *Hemingway v. Garth*, 51 Ala. 530.

WILLIAM C. FITTS, Attorney-General, for the State.

[Thomas v. The State.]

McCLELLAN, J.—The fact that the defendant, very soon after the assault he is charged with having made upon Hunter, married Hunter's sister, Virginia, was competent to go to the jury as tending to show motive for the assault, in connection with the fact that Hunter immediately preceding the assault had taken her away from Rogers' restaurant where defendant also was.

The court erred in refusing to allow defendant to ask the witness, Estelle Hunter, whether she had not told the father of the defendant the morning of the trial, at her father's house, that she would swear "that her brother Henry Hunter came home soon after he was struck that night, and told her he did not know who hit him." The purpose of this testimony was to show surprise on the part of the defendant, and to relieve him from the disadvantage at which he had been put by unexpected evidence, and not to impeach his own witness, though that might have been an incidental effect.—*White v. State,* 87 Ala. 24; *Griffith v. State,* 90 Ala. 583; *Hemingway v. State,* 51 Ala. 530.

Reversed and remanded.

COLEMAN, J., *dissenting.*—I recognize fully the principle, that a party is not bound by the testimony of a witness who has testified differently from what the party calling him had a right to expect, and has been then thus taken by surprise. It is stated by Greenleaf on Evidence, Vol. 1, section 444, as follows: "Whether it be competent for a party to prove that a witness whom he has called, and whose testimony is unfavorable to his cause, *had previously stated the facts in a different manner,* is a question upon which there exists some diversity of opinion. On the one hand, it is urged, that a party is not to be sacrificed to his witness; that he is not represented by him, nor identified with him; and that he ought not to be entrapped by the arts of a designing man, perhaps in the interest of his adversary. On the other hand, it is said, that to admit such proof would enable the party to get the naked declarations of a witness before the jury, operating, in fact, as independant evidence; and this, too, even where the declarations were made out of court, by collusion, for the purpose of being thus introduced. But the weight of authority seems in favor of admitting the party to show that the evidence

[Thomas v. The State.]

has taken him by surprise, and is contrary to the examination of the witness preparatory to the trial, or to what the party had reason to believe he would testify ; or, that the witness had recently been brought under the influence of the other party, and has deceived the party calling him.   For it is said that this course is necessary for his protection against the contrivance of an artful witness ; and that the danger of its being regarded by the jury as substantive evidence is no greater in such cases than it is where the contradictory declarations are proved by the adverse party.''

The rule is also correctly stated in *Hemingway v. State*, 51 Ala. 530, and *Campbell v. State*, 23 Ala. 76.   The rule applies in all cases where the witness is interrogated as to some facts bearing upon the issue before the jury, and surprises the party by testifying differently from what was expected.   I cannot conceive of any legal reason for extending the rule to the case under consideration.   A predicate had been laid to impeach the witness Henry Hunter, by asking him if he had not told the witness that "he did not know who assaulted him.''   Having answered in the negative, for the purpose of proving a contradictory statement, the witness was asked if Henry Hunter did not make such statement. Having answered that "he did not,'' the witness herself was asked if she had not *told the father of defendant* that she would swear that her brother, Henry Hunter, had made such a statement, and the question was asked in connection with the statement to the court by the counsel of defendant that his "purpose was to show surprise, *and to prove by defendant's father that she had made this statement to him.''* Not only was the question asked to show surprise but, as admitted, for the purpose of impeaching his own witness, by showing that she had made contradictory statements. The questions to the witness Hunter as to his statements were mere hearsay on the issue before the jury, and were admissible purely for the purpose of affecting his credibility, and now it is held, that his credibility may be impeached by showing the impeaching witness made contradictory statements.   The rule was never intended to be extended or applied in this way.