(104 So. 556)

**LARGIN v. STATE.   (6 Div. 416.)**

(Court of Appeals of Alabama.  May 19, 1925.)

**1. Witnesses ⬤⟿370(3)—Evidence that one witness had offered another money to testify to particular fact held admissible to show bias.**

Evidence that one of defendant's witnesses had offered money to another, if he would testify to certain fact, *held* admissible as showing first witness' bias, when specifically limited for that purpose.

**2. Witnesses ⬤⟿380(5)—Though litigant may not impeach own witness, he may, on receiving unexpected answers, question witness as to prior contradictory statements, though incidental effect is to impeach.**

As general rule, a litigant may not impeach his own witness, though, when put to disadvantage by unexpected answers, for purpose of refreshing recollection of witness and of showing surprise, may ask witness if he did not make statements contrary to his testimony, notwithstanding incidental effect is impeachment of witness.

**3. Witnesses ⬤⟿392(1)—Refusal to permit defendant to read to witness statement signed by him, after unexpected testimony by witness, held error.**

Where witness for defendant on cross-examination, to defendant's surprise, testified that another of defendant's witnesses had offered him money to testify to a particular fact, it was error to refuse to permit defendant to read to witness statement previously signed by him, containing statement to effect that statement contained all witness knew about case.

**4. Criminal law ⬤⟿396(2)—Where witness testified to part of conversation wherein he was offered money to testify to particular fact, it was error to exclude balance of conversation.**

Where part of conversation has been testified to, adverse party is entitled to have whole admitted in evidence and, where witness for

---

defendant testified that another witness had offered to testify to particular fact, it was error to exclude remainder of conversation.

**5. Criminal law ☞366(3)—Statements made by participant in fatal rencountre on regaining consciousness in presence of peace officer held not part of res gestæ.**

Where defendant's father and codefendant, after receiving serious wound while participating in fatal rencountre lost consciousness, and remained so for some minutes, statements by him on recovering consciousness in presence of and while attended by peace officer were not part of res gestæ.

**6. Criminal law ☞368(3)—Exclamation made by witness immediately after firing of last shot in fatal rencountre held such an instinctive exclamation as to render it admissible.**

Exclamation made by eyewitness immediately after firing of last shot in fatal rencountre, *held* such an instinctive exclamation as to render it admissible.

Appeal from Circuit Court, Tuscaloosa County; Fleetwood Rice, Judge.

James Largin was convicted of manslaughter in the first degree, and he appeals. Reversed and remanded.

J. F. Thompson, of Birmingham, and Brown & Ward, of Tuscaloosa, for appellant.

Defendant should have been permitted to question his witness as to statements inconsistent with those made on cross-examination. Gandy v. State, 81 Ala. 72, 1 So. 35; Watts v. State, 8 Ala. App. 115, 63 So. 15; Campbell v. State, 23 Ala. 45; White v. State, 87 Ala. 24, 5 So. 829; Griffith v. State, 90 Ala. 583, 8 So. 812; Thomas v. State, 117 Ala. 178, 23 So. 665; Schieffelin v. Schieffelin, 127 Ala. 14, 28 So. 687; Sou. Bell T. & T. Co. v. Mayo, 134 Ala. 641, 33 So. 16; Pelham v. Chatt. Gro. Co., 156 Ala. 500, 47 So. 172. What Oscar Largin said after regaining consciousness should have been admitted. Ritter v. Griswold, 2 Ala. App. 618, 56 So. 860; Deacon v. Comm., 162 Ky. 188, 172 S. W. 121; Britton v. Washington W. P. Co., 59 Wash. 440, 110 P. 20, 33 L. R. A. (N. S.) 109, 140 Am. St. Rep. 858; Terry v. State, 13 Ala. App. 115, 69 So. 370; 3 Wigmore, Evi. § 1745; Standard Oil Co. v. Douglass, 18 Ala. App. 625, 93 So. 286; Sou. Ry. v. Hall, 209 Ala. 237, 96 So. 73. Declarations forming a part of the occurrence should not be admitted as to one litigant and denied as to another. Lundsford v. State, 2 Ala. App. 38, 56 So. 89.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

There was no error in rulings on the examination of witness Stevens. Mosely v. State, 19 Ala. App. 335, 97 So. 247. Declarations made by Oscar Largin after the difficulty were inadmissible. 4 Michie's Ala. Dig. 182.

SAMFORD, J. The defendant and his father were separately indicted on a charge of murder in the first degree for the killing of Edward Elliott. The trials were had separately, but the facts as testified to by the state's witness were essentially the same, disclosing a joint offense. The contention of the defendant and his evidence tended to prove that he was not present at the fatal difficulty and had no hand in the killing.

Upon the trial one Ed Pearson, a cousin of defendant, was examined as a defendant's witness. Subsequently defendant examined as a witness in his behalf J. C. Stevens. After Stevens had given his evidence in chief, and upon cross-examination, the state sought to prove that the witness Pearson had offered to pay Stevens to testify to a certain fact in the pending case. The court refused to permit the state to make this proof, until a predicate had been laid to Pearson. Whereupon the witness Stevens was withdrawn, Pearson was recalled, and a predicate laid. Stevens was then recalled, and the predicate proven as laid, all of which was done over the objection and exception of defendant. The court specifically limited this evidence for the purpose of showing interest on the part of the witness Pearson. The defendant's counsel then offered to read to the witness a statement signed by the witness, in which there was a statement to the effect that the statement contained all he knew about the case, and to ask witness if such statement was not read over to him, and if he did not affirm its correctness, and further offered to cross-examine the witness upon that part of the testimony hereinabove referred to. The court refused to permit this, and as to which exceptions were reserved.

[1] Under the authority of Mosley v. State, 19 Ala. App. 335, 97 So. 247, Byrd v. State, 17 Ala. App. 301, 84 So. 777, it was competent to prove that Pearson had offered money to Stevens, as tending to show the bias of Pearson, and the court properly limited the testimony to this issue.

[2] Did the defendant have a right to cross-examine the witness Stevens on this new matter brought out by the state? The general rule, as is well known, is that a party litigant may not impeach his own witness. White v. State, 87 Ala. 24, 5 So. 829. This rule applies both as to independent evidence as to general character and to proof of contradictory statements as to material facts, made at different times and places. Southern R. Co. v. Parkes, 10 Ala. App. 318, 65 So. 202. Nor does the proof of independent facts in the cross-examination of a witness thereby make the witness the witness of the cross-examining party, subjecting the witness to cross-examination by the party offering him

as a witness. Johnson v. Armstrong, 97 Ala. 731, 12 So. 72. Whatever may be the rulings in .other jurisdictions, it is well settled in this 'state that, when a party introduces a witness, he will not be permitted to impeach him, but, when put to a disadvantage by unexpected answers for the purpose of refreshing the recollection of the witness and of showing surprise, and to relieve himself from the disadvantage at which he had been put by such evidence, it is competent for him to ask the witness if he had not made statements contrary to 'what he had just testified; such evidence being competent, although its incidental effect is the impeachment of the witness' testimony, this character of evidence being limited to the examination of the witness himself. Schieffelin v. Schieffelin, 127 Ala. 14, 28 So. 687; Thomas v. State, 117 Ala. 178, 23 So. 665; White v. State, 87 Ala. 24, 5 So. 829; So. Bell Tel. Co. v. Mayo, 134 Ala. 641, 33 So. 16.

[3] While these questions and answers were not admissible for the purpose of impeachment of the witness Stevens, they were admissible, and should have been admitted for the purpose of showing the hostility of the witness and surprise on the part of the defendant's counsel. The court was apprised of the predicament of defendant caused by the unexpected testimony of a witness introduced by him, and defendant's counsel asked to be allowed to ask the witness certain questions tending to show a contrary statement. The questions desired to be asked were not, strictly speaking, cross questions, but rather to show surprise and hostility on the part of the witness. In Watts v. State, 8 Ala. App. 115, 63 So. 15, a former learned judge of this court, in a case similar to this, and citing Thomas v. State, 117 Ala. 178, 23· So. 665, says:

"When new matter is brought out on a cross-examination against the interest of the party calling the witness in the nature of a surprise, the party may on re-examination cross him as to it, even though the incidental effect may be the impeachment of the witness."

In Hickman v. State, 12 Ala. App. 23, 67 So. 775, in a case where the solicitor entered into a virtual cross-examination of a state's witness, on redirect examination, the action of the court was justified and the judgment affirmed in response to the rule of "surprise and hostility"; to sustain which is cited Thompson v. State, 99 Ala. 173, 13 So. 753; Griffith v. State, 90 Ala. 583, 8 So. 812; Campbell v. State, 23 Ala. 44, 77. All of these cases recognize the rule that, when a witness has testified to a statement contrary to that expected, the party offering the witness may ask direct questions as to contrary statements made either to refresh the recollection or to show surprise or hostility. In this case the witness Stevens, on cross-examination, testified as an independent fact that defendant's witness Pearson had offered him

money to come into court and testify to a certain material fact in defendant's behalf. The defendant on re-examination should have been allowed to ask questions and receive answers from the witness or to show surprise and hostility.

[4] Moreover, the predicate laid to Pearson and testified to by Stevens was a detailed conversation between the parties. It is a familiar rule that, where a part of a conversation has been testified to, the opposite party is entitled to all of it. It was therefore error for the court to sustain the state's objection to these questions, seeking to prove other things that were said in the conversation detailed in the predicate and as a part of it.

[5] The evidence discloses that Oscar Largin, one of the defendants, and a participant in the fatal rencountre, was seriously wounded, and, after firing on deceased, lost consciousness, and remained so for several minutes, and until after state's witness Roby and a state law enforcement officer came to him. The defendant offered to prove by Roby what was said by Oscar immediately after his return to consciousness relative to the difficulty. It is suggested that there is uncertainty as to the rule of res gestæ. There is no uncertainty as to the rule itself. That is as certain as can be. The uncertainty arises in the application of the rule to certain facts. It is not always clear when the rule applies and when it does not apply, and must ever remain so. Not the least of these uncertainties arise out of what is called . "spontaneous exclamations," such as are declarations made under such circumstances as that it may be reasonably affirmed that the declarations were instinctive from the occurrences to which they relate rather than the retrospective narration of a past fact. Holyfield v. State, 17 Ala. App. 162, 82 So. 652; Nelson v. State, 130 Ala. 83, 30 So. 728; Ellis v. State, 18 Ala. App. 344, 93 So. 334; Oldacre v. State, 16 Ala. App. 151, 75 So. 827. Under certain conditions the time at which these exclamations and declarations are made, so as to be admissible, might be extended as in the case of Deacon v. Com., 162 Ky. 188, 172 S. W. 121, and Britton v. Wash. W. P. Co., 59 Wash. 440, 110 P. 20, 33 L. R. A. (N. S.) 109, 104 Am. St. Rep. 858, a case much quoted and often cited, but the instant case presents no such condition. Here in point of time the declarations were made several minutes after the difficulty had ended; how long after the difficulty it was before Oscar lost consciousness is not clearly shown; when he returned to consciousness he was in the presence and being attended by a peace officer, whom he knew to be such, and under such circumstances as to instantly frame a statement in justification of the act which he had just committed. Such is the characteristic of the human mind as that when confronted by authority it instantly

seeks justification for any act which has been committed, and this may be said to be the law of instinctive self-preservation. The court did not err in its rulings upon the admissibility of this evidence.

[6] The exclamation of Miss Elsie Deal, made immediately after the firing of the last shot in the difficulty, was such an exlamation as was instinctive from the occurrences to which they related, and was therefore admissible. Moreover, this testimony could not have injuriously affected the defendant's case.

For the errors pointed out the judgment is reversed and the cause is remanded.

Reversed and remanded.