James Otis Harris was indicted for and convicted of the "attempted murder" of Richard Stone, by shooting him with a rifle. After a sentencing hearing, and pursuant to the Alabama Habitual Felony Offender Act, the trial court sentenced the appellant, *Page 122 
James Otis Harris, to life imprisonment without parole.
On April 11, 1980, while working "undercover" on a narcotics investigation, Richard Stone, Jr., an officer with the Birmingham Police Department, was shot in the back with a rifle as he sat in his unmarked vehicle a few houses down from the appellant's home.
Although there was evidence to the contrary, the state's evidence, which included Stone's own eyewitness account of the incident, was that the appellant fired the three rifle shots that injured Stone. Stone apparently avoided further injury only because he was able to drive away from the scene and the appellant as appellant approached the vehicle.
This shooting incident, according to Officer Stone, occurred after he had seen the appellant and Frank Sullivan handling what Stone thought to be narcotics in a large green plastic bag. Stone had made an attempt to reach headquarters with the information, but had nearly been forced off the road by a vehicle occupied by the appellant and Sullivan. After avoiding this difficulty, Stone returned to the street where the alleged activity by the appellant and Sullivan had taken place and parked a few houses away from appellant's home, which he continued to observe for further activity by the appellant and Sullivan. Soon thereafter, in his rear view mirror, he observed the appellant raise a rifle and fire the three shots that injured him.
The prosecution's theory was that appellant attempted to kill Stone because he knew that Stone was a police officer, and he wanted to prevent Stone from reporting to headquarters the information he had acquired that morning concerning the appellant. No other motive was apparent from the evidence.
The appellant presented evidence to the contrary, that Frank Sullivan did the shooting; that he, the appellant, was not involved. The jury chose to believe the more convincing evidence presented by the prosecution and found the appellant "guilty as charged."
 I
Appellant contends that the trial court erred in allowing the prosecution to introduce evidence that the appellant knew that Stone was a police officer. Appellant argues that allowing this proof was prejudicial to his cause because it informed the jury that on some prior occasion the appellant was confronted with Stone in his official status. Such a fact "dangled" in front of the jury, the appellant argues, gave rise to the conclusion that the appellant was a "criminal."
We do not agree that Officer Stone's testimony that prior to this incident he had identified himself as a police officer in the appellant's presence (R. 62) led the jury to conclude that the appellant was a "criminal." Officer Stone's statement was properly restricted by the trial court and made no reference to previous criminal activity by the appellant whatsoever. Moreover, the appellant, himself, "dangled" this fact before the jury again when, during cross-examination of Officer Stone (R. 68), he solicited testimony that the appellant knew Stone was an "undercover man."
We do agree that evidence that appellant knew Officer Stone was an undercover policeman was indeed prejudicial to the appellant because it tended to prove the state's theory that the only "motive" for the shooting was to prevent Stone from reporting appellant's alleged illegal drug activities. It was as prejudicial and also as proper as any other legal evidence introduced by the prosecution to establish its case against the appellant. We do not feel, as appellant argues on appeal, that this evidence was used by the state to imply that appellant shot Stone "just because he was a police officer." Rather, the evidence was properly introduced and admitted to establish the state's theory that the appellant shot Stone to prevent him from performing his duties as a police officer in connection with appellant's other alleged illegal activities earlier that same day. *Page 123 
Furthermore, the appellant had ample opportunity to discredit the state's theory in the presence of the jury during trial.
We find no error with reference this issue.
 II
Appellant further asserts that the trial court erred in permitting the state to prove with a different witness the existence of a prior inconsistent statement by witness Frank Sullivan that he, during direct examination by the state, denied making.
The record reveals that in a statement made to police investigators shortly after this shooting incident, Frank Sullivan stated that he saw the appellant fire the shots that injured Officer Stone. On direct examination, however, after the proper predicate had been laid, Sullivan testified that he told the officers that he saw the appellant with a gun but that he never said that he saw the appellant actually shoot it. (R. 123). Subsequently, during direct examination of Officer Gaut, the Birmingham Police Officer who took Sullivan's prior statement, the trial court allowed the prosecution, over appellant's objection, to introduce the statement made by Sullivan to the effect that he saw the appellant shoot Officer Stone. (R. 185).
The Alabama cases permit this impeachment procedure when impeaching an opponent's witness. Allen v. State, 390 So.2d 676
(Ala.Cr.App. 1980); Bythewood v. State, 373 So.2d 1170
(Ala.Cr.App.), cert. denied, 373 So.2d 1175 (Ala. 1979); Walkerv. State, 369 So.2d 814 (Ala.Cr.App. 1978), rev'd on other grounds, 369 So.2d 825 (Ala. 1979). However, the current Alabama rule, and we offer no discussion in support of it at this time, is that after one claims surprise and confronts his own witness with his prior inconsistent statement, if he denies having made said statement, it is improper to prove same with another witness. Isbell v. State, 57 Ala. App. 444,329 So.2d 133, cert. denied, 295 Ala. 407, 329 So.2d 140 (1976); Randolphv. State, 331 So.2d 766 (Ala.Cr.App.), cert. denied,331 So.2d 771 (Ala. 1976); Patrick v. State, 43 Ala. App. 338,190 So.2d 551, cert. denied, 280 Ala. 717, 190 So.2d 555 (1966); Marcumv. State, 39 Ala. App. 616, 107 So.2d 899 (1958), cert. denied,268 Ala. 489, 107 So.2d 902 (1959); C. Gamble, McElroy'sAlabama Evidence (3d ed. 1977), § 165.01 (7)(g), p. 347.
The trial court, therefore, erred in admitting into evidence the testimony of Officer Gaut concerning Sullivan's prior inconsistent statement to the officers.
Nevertheless, having reviewed all of the evidence in this case, we have determined that this error was harmless. Rule 45 A.R.A.P. There was sufficient evidence from other witnesses to establish the state's case against the appellant. Officer Stone, the victim, positively identified the appellant as the man who shot him. (R. 52). Larry Jones, who had been working across the street from the appellant's house, testified that he saw the appellant with a rifle immediately after the shooting. (R. 19). Furthermore, Sullivan, though he denied (at trial) that he saw the appellant shoot the rifle, did admit that he saw the appellant with the rifle in question at the time of the shooting.
It is this independent evidence of appellant's guilt that distinguishes this case from Randolph v. State, supra, a case cited by appellant in which the conviction was reversed because the only evidence of appellant's guilt was the erroneously admitted evidence of a prior inconsistent statement.
Moreover, the state was not alone in trying to discredit Frank Sullivan as a witness. In fact, the appellant's entire defense was that Frank Sullivan was the one who shot Officer Stone. The appellant introduced evidence which, if believed, would have discredited Sullivan's entire testimony at trial as well as his prior inconsistent statement.
We are convinced that the admission of the prior inconsistent statement did not supply the jury any new information, but merely attacked Sullivan's credibility at trial, and was in no way damaging to this appellant. *Page 124 
We therefore conclude that, while appellant's contentions have some technical merit and were here well argueHd in brief and in oral argument, this case is nevertheless due to be and is hereby affirmed.
AFFIRMED.
All the Judges concur.